IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTINE M. BELL** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 08-639** |
| | : | |
| **MONEY RESOURCE CORP.** | : | |

**MEMORANDUM AND ORDER**

**Kauffman, J.**                                                                                                                    **February  12 , 2009**

Now before the Court is Defendant Money Resource Corp.'s Motion to Dismiss the Complaint (the "Motion").  For the reasons discussed below, the Motion will be denied.

**I.  BACKGROUND**

This putative class action arises from a series of "junk faxes" received by Plaintiff Christine M. Bell ("Plaintiff"), a loan correspondent doing business under the name of Allegiance Mortgage Services.  According to the Complaint, Plaintiff received two "unsolicited advertisements" via her facsimile machine on June 13, 2007 and June 21, 2007.  Compl. ¶ 8.  Plaintiff alleges that these faxes were sent by or on behalf of Defendant Money Resource Corp. ("Defendant") and that "Defendant continued to transmit unsolicited faxes in December, 2007 and January, 2008 and, upon information and belief, is continuing to transmit unsolicited faxes."  Id. ¶¶ 8-9.  She alleges further that Defendant did not have permission to transmit faxed advertisements to her, that she has no prior business relationship with Defendant, and that none of the faxes from Defendant contained an opt-out notice required by law.  Id. ¶¶ 10-12.

Plaintiff's Complaint raises two causes of action. First, she alleges that Defendant's actions violate the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(C), which prohibits the use of a telephone facsimile machine or other device to send an unsolicited advertisement to another facsimile machine. Second, she raises a common-law claim for conversion under Pennsylvania law, alleging that "Defendant improperly and unlawfully converted Plaintiff and the class members' fax machine, toner, paper and time to its own use, and caused undue wear and tear on Plaintiff and the class members' fax machines." Compl. ¶ 32.

In addition to her individual claims, Plaintiff seeks to represent a class of persons or entities that received faxes from Defendant at any time between February 12, 2004 and the present. She alleges that the Court has jurisdiction over this putative class action pursuant to the Class Action Fairness Act ("CAFA") because the total amount in controversy exceeds $5,000,000 and because she and Defendant are diverse.[1] See 28 U.S.C. § 1332(d)(2)(A) (permitting jurisdiction over a class action where the aggregate amount in controversy exceeds $5,000,000 and where "any member of a class of plaintiffs is a citizen of a State different from any defendant"). Plaintiff alleges that "Defendant has been sending unsolicited advertisements for at least eight (8) months and it is believed, and therefore averred, that more than 3,333 faxes have been sent to persons and entities nationwide." Compl. ¶ 6. Based on alleged statutory damages of $1,500 per fax for violation of the TCPA, damages for conversion, and the value of any injunctive relief the class can obtain, Plaintiff claims that the total amount in controversy exceeds the $5,000,000 threshold.

---

[1] Plaintiff alleges that she is a resident and citizen of Pennsylvania, and that Defendant is a New York corporation with its principal place of business in New York. Compl. ¶¶ 4-5.

On April 10, 2008, Defendant filed the instant Motion, arguing that the action should be dismissed on two grounds. First, Defendant seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the Court lacks subject matter jurisdiction over the action because it may not be maintained as a class action. Second, Defendant seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff's conversion claim fails as a matter of law.

## II.  SUBJECT MATTER JURISDICTION

### A.  Legal Standard

"Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter, or if the plaintiff lacks standing to bring his claim." Samsung Elecs. Co. v. ON Semiconductor Corp., 541 F. Supp. 2d 645, 648 (D. Del. 2008). When considering a motion to dismiss pursuant to Rule 12(b)(1), the Court must first consider whether the defendant is presenting a "facial attack" or a "factual attack" to subject matter jurisdiction. When considering a "facial attack," in which the defendant argues that the facts alleged in the pleadings fail to establish jurisdiction, the Court "looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." United States ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). In contrast, when considering a "factual attack," in which the defendant challenges the factual assertions made in the plaintiff's pleadings, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of

jurisdictional claims." Mortensen, 549 F.2d at 891.

Defendant's Motion does not attempt to refute factual allegations made in the Complaint but instead argues that, as a matter of law, the Court lacks jurisdiction over the action. Accordingly, the Court will consider the challenge to be a facial challenge and will examine the allegations in the light most favorable to Plaintiff.

### B. Discussion

Defendant first argues that all claims under the TCPA must be brought in state court. In support of this argument, it relies on the decision in ErieNet, Inc. v. Velocity Net, Inc., 156 F.3d 513, 519 (3d Cir. 1998), in which the Third Circuit concluded "that because the TCPA reflects Congress' intent to authorize consumer suits in state courts only, and because it is 'a more specific statutory provision conferring exclusive jurisdiction elsewhere,' appellants cannot rely on the general federal question jurisdiction of § 1331." The ErieNet Court explained that the TCPA, which explicitly provides that litigants may bring TCPA claims in state court, reflects Congressional intent "to authorize private causes of action only in state courts, and to withhold federal jurisdiction." Id. at 517. Defendant contends that based on the absence of federal question jurisdiction, the Complaint must be dismissed for lack of subject matter jurisdiction.

The ErieNet decision, however, did not address the question of whether diversity jurisdiction over TCPA claims can exist, and numerous courts have found that the absence of federal question jurisdiction does not preclude a federal court from hearing TCPA cases founded upon diversity jurisdiction. See, e.g., US Fax Law Ctr., Inc. v. iHire, Inc., 476 F.3d 1112, 1118 (10th Cir. 2007) ("Because there is no express congressional intent to preempt diversity jurisdiction, and because the diversity jurisdiction statute and the TCPA are not irreconcilable,

the district court erred in finding that Congress intended to preclude federal diversity jurisdiction over TCPA claims."); Gottlieb v. Carnival Corp., 436 F.3d 335, 343 (2d Cir. 2006) ("Having considered the statute's text, structure, history, and purpose, we conclude that Congress did not intend to divest the federal courts of diversity jurisdiction over private causes of action under the TCPA.").[2]  In other words, although TCPA does not confer federal question jurisdiction, nothing in the statute prevents a TCPA claim from being litigated in federal court where some other statute, such as CAFA, confers subject matter jurisdiction.  See, e.g., Watson v. NCO Group, Inc. 462 F. Supp. 2d 641, 647 (E.D. Pa. 2006) ("This Court is convinced that diversity of citizenship remains a viable means to establish subject matter jurisdiction over a TCPA claim.  To conclude otherwise would create the anomaly in which a plaintiff asserting state law claims for abusive phone practices could bring those claims in federal court based on diversity, while plaintiff's parallel TCPA claim could only be filed in state court." (citing Gottlieb, 436 F.3d at 342)); Clean Air Council v. Dragon Int'l Group, 2006 U.S. Dist. LEXIS 52292, at *12 (M.D. Pa. July 28, 2006) (finding that, in the case of a TCPA class action, "CAFA provides an independent basis for jurisdiction"); Kinder v. Citibank, 2000 U.S. Dist. LEXIS 13853, at *10-11 (S.D. Cal. Sept. 13, 2000) ("Although the Court agrees with Plaintiff that the TCPA itself provides no basis for federal jurisdiction, nothing in the TCPA precludes federal courts from hearing TCPA claims where some other independent basis for jurisdiction exists.").  Accordingly, the Court rejects the

---

[2]  In Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 450 (7th Cir. 2005), the Seventh Circuit found that TCPA claims may be brought pursuant to both federal and diversity jurisdiction, including diversity jurisdiction founded on CAFA.  While Brill conflicts with the Third Circuit's decision in ErieNet as to the issue of federal jurisdiction, the Seventh Circuit's decision specifically found that under CAFA, the plaintiffs could invoke diversity jurisdiction to raise TCPA claims in federal court.

overbroad argument that, without exception, TCPA actions may not be brought in federal court.

Even if CAFA provides a basis for subject matter jurisdiction, Defendant maintains, the Complaint must be dismissed. Defendant contends that as a matter of law, no class could be certified in this action, and that because subject matter jurisdiction is contingent upon class action status, dismissal of the action is appropriate. In support of its argument, Defendant cites a series of cases in which courts have denied class certification to plaintiffs bringing TCPA claims. E.g., Kenro, Inc. v. Fax Daily, Inc., 962 F. Supp. 1162, 1170 (S.D. Ind. 1997); Forman v. Data Transfer, Inc., 164 F.R.D. 400, 405 (E.D. Pa. 1995). Because numerous courts have denied class certification in TCPA actions, and because denial of class certification is, in its opinion, a foregone conclusion, Defendant urges the Court to dismiss the instant action for lack of subject matter jurisdiction.[3]

Defendant's reliance on cases denying class certification in TCPA actions is unpersuasive, given that every case cited was decided after class action discovery was complete and a motion for class certification was filed. See, e.g., McGaughey v. Treistman, 2007 U.S. Dist. LEXIS 126, at *10 (S.D.N.Y. Jan. 4, 2007) ("Because Plaintiff's motion for class certification must be denied, Plaintiff's action is no longer a class action, and this Court cannot retain subject matter jurisdiction in diversity over Plaintiff's action pursuant to the Class Action Fairness Act."). Moreover, as Plaintiff points out, numerous courts have certified classes in

---

[3] Defendant also argues that, in the event the conversion claim is not dismissed, class certification as to that claim must be denied because differences in state law and the need for individualized damages calculations would render class treatment inappropriate. As with Defendant's arguments regarding the TCPA claim, the Court finds this argument premature. The Court does note, however, that if it finds the TCPA claim inappropriate for class action treatment, the nominal damages for the class conversion claim as pled would be manifestly insufficient to meet the $5,000,000 threshold under CAFA.

TCPA actions, e.g., Hinman v. M&M Rental Ctr., 545 F. Supp. 2d 802, 808 (N.D. Ill. 2008), and the fact that courts have reached different conclusions as to class certification highlights the uncontroversial point that each class certification motion is different and must be decided on its individual merits.  Accordingly, the Court declines to rule that class certification must be denied without a motion for class certification and the benefit of discovery.  See, e.g., Rosenberg v. Avis Rent A Car Sys., 2007 U.S. Dist. LEXIS 55219, at *13-14 (E.D. Pa. July 31, 2007) (noting that the defendant was using a motion to dismiss allegedly vague class action allegations "as an opportunity to attack the merits of the class itself" and concluding that such an attack was improper before a class certification motion had been filed); Brothers v. Portage Nat'l Bank, 2007 U.S. Dist. LEXIS 24326, at *22 (W.D. Pa. Mar. 29, 2007) (explaining that a Rule 12(b)(6) motion must not be used "as a vehicle for preempting a certification motion"); Beauperthuy v. 24 Hour Fitness USA, Inc., 2006 U.S. Dist. LEXIS 88988, at *9 (N.D. Cal. Nov. 28, 2006) (finding that a motion to strike class allegations from a complaint "is an improper attempt to argue against class certification before the motion for class certification has been made and while discovery regarding class certification is not yet complete").

As numerous courts have recognized, the Court maintains jurisdiction over this putative class action at least until a motion for class certification is decided.  See 28 U.S.C. § 1332(d)(8) ("This subsection shall apply to any class action before or after the entry of a class certification order by the court with respect to that claim."); In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig., 2007 U.S. Dist. LEXIS 62483, at *5 (E.D. Mich. Aug. 24, 2007) (finding that under CAFA, "the Court's jurisdiction over this matter is proper, regardless of whether a class has been certified"); Falcon v. Philips Elecs. N. Am. Corp., 489 F. Supp. 2d 367,

368 (S.D.N.Y. 2007) ("CAFA does not list class certification as a prerequisite to federal jurisdiction. Indeed, at the time a CAFA action is brought in federal court, class certification will almost always remain to be decided at some unspecified future date."). Nothing in CAFA requires the Court to undertake the often difficult, complex task of ruling on class certification without permitting the party seeking such certification the opportunity to be heard on the matter. Defendant's arguments about the impropriety of class certification in this case ultimately may prevail, but the Court will not dismiss a potentially viable class action based on speculation that the class in this case may suffer from the deficiencies cited by other courts dealing with other potential classes.

## III.  MOTION TO DISMISS PLAINTIFF'S CONVERSION CLAIM

### A.  Legal Standard

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court is required "to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). In deciding a 12(b)(6) motion, "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (citations omitted in original) (quoting Bell Atl. Corp. v. Twombly,

127 S. Ct. 1955, 1965 (2007)).

**B. Discussion**

Defendant argues that Plaintiff's conversion claim fails as a matter of Pennsylvania law. As explained in the Restatement, "Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Restatement (Second) of Torts § 222A(1) (1965).[4] Defendant contends that "[s]ending four (4) facsimiles simply cannot rise to the level of serious interference with property as a matter of law." Def.'s Mot. 6. In support of its argument, Defendant relies on cases in which courts have dismissed conversion claims based on unsolicited fax advertisements because, the courts reasoned, any claims for lost paper and ink were de minimis. See Rossario's Fine Jewelry, Inc. v. Paddock Publ'ns, Inc., 443 F. Supp. 2d 976, 980 (N.D. Ill. 2006) (dismissing a conversion claim for lost paper and ink based on unsolicited faxes and noting that "the ancient maxim 'de minimis non curat lex' might well have been coined for this occasion"); Edwards v. Emperor's Garden Rest., 130 P.3d 1280, 1287-88 (Nev. 2006) (dismissing a conversion claim based on an unsolicited fax and explaining that "any damage to Edwards' paper and toner that occurred from a single facsimile advertisement was merely technical and so inconsiderable as to require the application of the common-law doctrine de minimis non curiat lex").

Defendant's de minimis argument, however, is misplaced. The Restatement definition of

---

[4] Pennsylvania courts have followed the Restatement (Second) of Torts when analyzing claims for conversion. See, e.g., Norriton E. Realty Corp. v. Cent.-Penn Nat'l Bank, 254 A.2d 637, 638 (Pa. 1969); Northcraft v. Edward C. Michener Assocs., Inc., 466 A.2d 620, 624 (Pa. Super. Ct. 1983).

conversion requires serious interference with the owner's right to the property in question, <u>not</u> serious consequences (i.e., a substantial monetary loss) as a result of that interference.  See <u>R. Rudnick & Co. v. G.F. Prot., Inc.</u>, 2009 U.S. Dist. LEXIS 3152, at *10 (N.D. Ill. Jan. 15, 2009) ("Section 222A does not require that the chattel have some minimal value, but only that a conversion claim requires such complete interference that <u>full</u> <u>compensation</u> for the chattel is required.").  In other words, Defendant "is conflating two separate inquiries: first, the degree to which the property at issue (paper and ink/toner) was converted, and second, the value of the property at issue." <u>Id.</u> at *9.  As courts have recognized, toner and paper consumed by an unwanted fax are lost permanently, and therefore the owner is deprived completely of their use. See <u>Centerline Equip. Corp. v. Banner Pers. Serv., Inc.</u>, 545 F. Supp. 2d 768, 782 (N.D. Ill. 2008) ("As a plain reading of the Complaint reveals . . . Centerline has indeed specifically alleged that recipients (presumably including itself) of unsolicited fax advertisements are deprived of their paper and toner—a plausible allegation; once paper has had an advertisement printed upon it, it is no longer useable for other purposes, nor can the ink be recovered for reuse." (citation omitted)). Accordingly, with respect to the "serious interference" requirement for a conversion claim, the Court finds that the Complaint does allege a serious interference with Plaintiff's property rights in her toner and paper.  See <u>R. Rudnick & Co.</u>, 2009 U.S. Dist. LEXIS 3152, at *10; <u>Centerline</u>, 545 F. Supp. 2d at 782.

      While the costs of lost paper and ink are minimal, Pennsylvania courts permit conversion claims for only nominal damages.  In <u>Stevenson v. Economy Bank of Ambridge</u>, 197 A.2d 721, 727 (Pa. 1964), the Pennsylvania Supreme Court held that in a conversion action, nominal damages were permissible where the plaintiff was denied access to a safe deposit box for two

days but suffered no actual damages. As the Court explained, "No acceptable evidence was offered as a basis for fixing compensation for that deprivation of possession, nor did [the plaintiff] prove real, special or other compensatory items of damages. In the absence of such proof, [the plaintiff's] recovery for the technical and temporary interference with her right of access and possession must be limited to a vindication of that right by an award of nominal damages." Id. The Stevenson Court recognized that a conversion claim with no actual damages does not cease to be a cognizable claim. See id. ("Nominal damages represent the award of a trifling sum where there has been a breach of duty or infraction or invasion of a right, but no real substantial or serious loss or injury has been established."). Rather, the conversion claim becomes one for nominal damages, which a plaintiff may seek even in cases where, as here, actual losses are minimal.

Accordingly, even accepting Defendant's argument that Plaintiff's actual damages are trivial, the Court declines to dismiss a conversion claim that could, if successful, recover nominal damages. See, e.g., R. Rudnick & Co., 2009 U.S. Dist. LEXIS 3152, at *10 ("Turning, then, to the presumably minimal cost Rudnick has suffered [as a result of unsolicited faxes], this is still a viable claim; Illinois courts permit nominal damages in conversion actions. Since nominal damages are permitted, the de minimis theory has no applicability." (citation omitted)). Given the fact that class action litigation is common where no individual plaintiff has suffered a significant loss, the fact that one individual's damages may be minimal is insufficient to require dismissal of the conversion claim. Centerline, 545 F. Supp. 2d at 782 ("If Illinois courts recognize conversion claims where there are no damages at all, they might well also recognize actions for very small damages. The court concludes that Illinois law does not require

application of the de minimis rule to class conversion claims founded upon very small individual losses, so long as those losses can plausibly be inferred to be substantial in the aggregate."). As noted above, however, the TCPA claim provides virtually all of the aggregate damages in this action. If, after considering a fully briefed class certification motion, the Court denies certification as to the TCPA claim, the conversion claim as pled does not meet the $5,000,000 minimum required by CAFA.

## IV.  CONCLUSION

For the reasons discussed above, Defendant's Motion will be denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTINE M. BELL** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 08-639 |
| | : | |
| **MONEY RESOURCE CORP.** | : | |

## ORDER

**AND NOW**, this 12th day of February, 2009, upon consideration of Defendant Money Resource Corp.'s Motion to Dismiss (docket no. 8), Plaintiff Christine M. Bell's Response thereto (docket no. 10), and Defendant's Reply (docket no. 11), and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that the Motion is **DENIED**.

BY THE COURT:


 /s/ Bruce W. Kauffman

**BRUCE W. KAUFFMAN, J.**